808 F.2d 836
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNION TRUST COMPANY OF MARYLAND, Appellant,
v.
COMMERCIAL CREDIT DEVELOPMENT CORPORATION, Appellee.
 No. 86-3511.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 12, 1986.
Decided Dec. 29, 1986.
 
 Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and ROBERT G. DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Lawrence Gebhardt (T. Patrick O'Rourke; James T. Heidelbach; Gebhardt & Smith on brief) for appellant.
 Kenneth Wells Parkinson (John J. Brennan, III; Jackson & Campbell, P.C.; David A. Rosenberg, Commercial Credit Development Corporation on brief), for appellee.
 PER CURIAM:
 
 
 1
 Union Trust Company of Maryland appeals the summary judgment granted to Commercial Credit Development Corporation in Union Trust's action for immediate recovery of its participation interest in a first mortgage loan. We affirm the judgment of the district court.
 
 
 2
 Commercial Credit made a $10 million loan to Allison/Walker Interests Property Company, a Texas partnership, for the construction of an office building in Houston, Texas. The loan was secured by a first priority deed of trust and was made under terms which required the lender's consent to any junior financing. Union Trust purchased a 25% interest in the loan pursuant to a participation agreement which recognized Commercial Credit as the lead lender. When Commercial Credit became concerned about the success of the venture, it made second and third mortgage loans to Allison/Walker for $1 million and $827 thousand respectively. Although Union Trust did not participate in the additional loans, it consented to both of them.
 
 
 3
 Allison/Walker defaulted on each of the loans and Commercial Credit--after failing to reach agreement with Union Trust on how title to the office building should be obtained--foreclosed on all three mortgages simultaneously. At the foreclosure sale Commercial Credit was the only bidder. It purchased the office building for $11.65 million, an amount greater than the sum outstanding on not only the first, but the second and third mortgages as well.
 
 
 4
 Union Trust then filed this diversity action to recover the money it had advanced under the participation agreement and interest on that money. Commercial Credit filed a counterclaim seeking reimbursement from Union Trust for a share of its expenses arising from the foreclosure and from managing and maintaining the office building. The district court granted summary judgment to Commercial Credit on Union Trust's claim and to Union Trust on Commercial Credit's counterclaim.
 
 
 5
 Union Trust argues that when Commercial Credit acquired title to the office building by foreclosure, it also accelerated Union Trust's right to receive its participation interest in the first mortgage. Union Trust alleges four grounds for Commercial Credit's liability: 1) breach of both express and implied terms of the participation agreement; 2) breach of fiduciary duty; 3) breach of the obligation to deal honestly and in good faith; and 4) conversion. Commercial Credit contends that it has simply done what its agreement with Union Trust demands.
 
 
 6
 Paragraph six of the loan participation agreement provides that unless all participants determine otherwise, Commercial Credit will foreclose the deed of trust in the event of Allison/Walker's default and that:
 
 
 7
 [f]ollowing foreclosure or other acquisition of the Mortgaged Property, title thereto shall be taken in name of [Commercial Credit] if it is the successful bidder, and [Commercial Credit] shall either itself or through a managing agent selected by [Commercial Credit] manage and operate the Mortgaged Property and rent the same upon such terms as all Participants may agree upon paying the net proceeds of such operation to the Participants pro rata at monthly intervals. Any expenses of such operation shall be borne ratably by the Participants. [Commercial Credit] shall sell the Mortgaged Property at a price and upon terms agreed upon by all Participants. Promptly after such sale, [Commercial Credit] shall distribute the net cash proceeds ratably between the Participants.
 
 
 8
 The district court properly held that the express terms of the participation agreement, and Commercial Credit's compliance with them, show that Union Trust is not entitled to immediate repayment on any of the legal theories it has advanced.
 
 
 9
 Union Trust maintains that paragraph six of the participation agreement has no force because Commercial Credit bid on the office building not as lead lender but as a third party. Union Trust bases this conclusion on the fact that Commercial Credit did not act as a "normal" first mortgage lender. Ordinarily, a first mortgage lender would not be expected to bid more at a foreclosure sale than the balance owed on the first mortgage, forcing junior lenders to buy out the senior mortgage in order to keep their junior loans from being extinguished. Union Trust asserts that by bidding an amount great enough to cover its junior mortgages as well as the senior one, Commercial Credit acted in its capacity as a junior mortgage lender and, therefore, must buy out participants in the first mortgage--as an outside lender would--if it wishes to protect the second and third mortgages. Commercial Credit, however, introduced evidence that the fair market value of the office building was $13.1 million. It argues that for the sale to be valid, it had to bid "a 'fair equivalent' " of the value of the building, relying on Durrett v. Washington National Insurance Co., 621 F.2d 201, 203 (5th Cir.1980) (sale at foreclosure for less than 70% of market value questionable under Bankruptcy Code).
 
 
 10
 The flaw in Union Trust's argument is that Commercial Credit is not merely a junior lien holder. When Union Trust allowed Commercial Credit to make additional loans that were secured by second and third mortgages, it did not condition its permission on modification of paragraph six of the participation agreement. The provisions of paragraph six pertaining to the disposition of the property and the distribution of the proceeds remain in effect. As the district court observed, the amount of Commercial Credit's bid does not settle the essential question of when Union Trust must be paid. That question is answered by the participation agreement which specifically spells out the financial arrangements in the event of foreclosure.
 
 
 11
 In the meantime, as Commercial Credit acknowledged at oral argument, it is a fiduciary holding legal title for the benefit of Union Trust which has a beneficial interest in the property arising out of its 25% participartion in the loan secured by the first mortgage.
 
 
 12
 AFFIRMED.